In the *Matter of* ROBERT S. DICKENS et al., Appellants, *v.* PENELOPE ERNESTO et al., Respondents.

Fourth Department, June 25, 1971.

*George Wallach* for appellants.

*Robert E. Casey, Jr., County Attorney* (*Anthony C. Vaccaro* of counsel), for Penelope Ernesto and others, respondents.

*Louis J. Lefkowitz, Attorney-General* (*John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for State of New York, respondent.

CARDAMONE, J. We are asked to declare unconstitutional the religious affiliation requirements of certain New York statutes,

enacted in conformity with section 32 of article VI of the New York Constitution, as set forth in section 116 of the Family Court Act, section 373 of the Social Services Law, and section 113 of the Domestic Relations Law because, it is alleged, they provide for the "establishment of religion" proscribed by the First Amendment to the United States Constitution.

The facts are simple and undisputed. On December 22, 1969, petitioners, Robert and Anne Dickens, sought to file an application as adoptive parents in the Erie County Department of Social Services. Upon being interviewed by the assigned caseworker they were asked a question regarding their religious affiliation. Mr. Dickens stated that he was an atheist and Mrs. Dickens stated that she no longer had any affiliation. Both said they had no intention of joining any kind of organized religion. Based solely on this lack of an expressed religious affiliation their application to become adopting parents was denied.

The practice of the department when interviewing the natural mother is to inquire as to her religious preference for her child. The department claims it gives the mother a choice of her own religion, another religion not her own, or no religion, so long as the best interest of the child is served. There is a form for the natural mother to sign. In her 16 years with the department, the present director testified that she had never known anyone to sign the form expressing no religious preference for her child, although for the past four years the natural parents may have indicated their indifference to the religious placement of their child. The department states that it does not attempt to influence the parent in designating a religion for the child.

However, the Director of the Erie County Department of Social Services testified that when the parents were unknown and there was no evidence with respect to the child's religion, the department would take " the first good home that comes along whether Catholic, Protestant (or) Jewish ". Nothing in our laws requires this practice and, in fact, it is not permitted because, in effect, it prefers religion to no religion in adoption placements. Children with unknown religious affiliations should be placed in the first good home so far as consistent with the best interest of the child without regard to the religion or nonreligion of the prospective adoptive parents.

Section 373 of the Social Services Law provides that whenever a child is committed to any agency or released, surrendered, or boarded out, such shall be, when practicable, to an agency or person of the same religious faith as the child. Section 116 of the Family Court Act makes a similar provision when a child

is remanded or committed by the Family Court, as does section 113 of the Domestic Relations Law when an authorized agency gives custody under court order for adoption of a minor in its lawful custody. The three statutes under attack conform with the provisions of section 32 of article VI of the New York Constitution which provides: "When any court having jurisdiction over a child shall commit it or remand it to an institution or agency or place it in the custody of any person by parole, placing out, adoption or guardianship, the child shall be committed or remanded or placed, when practicable, in an institution or agency governed by persons, or in the custody of a person, of the same religious persuasion as the child."

The test that has been fashioned for distinguishing those forbidden involvements in religion by the State from those contacts by the State permitted under the Establishment Clause may be stated as follows: "What are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion." (*Abington School Dist.* v. *Schempp,* 374 U. S. 203, 222).

The provisions of the recited statutes are a valid exercise of the power of the State as *parens patriæ* in regulating the manner in which the custody of children should be determined (*Matter of Brock,* 245 App. Div. 5, 12). While the laws relating to the custody of children are secular, in the exercise of such power the State may not ignore the religious preferences of the parents. The State must recognize the right of the parent to guide one's child intellectually and religiously as being a substantial part of the freedom of the parent protected by the Fourteenth Amendment (*Pierce* v. *Society of Sisters,* 268 U. S. 510). Clearly, these statutes protect that free exercise of religious choice made by the parents of all children whose custody is regulated by the provisions of any of these statutes. The First Amendment does not require the State to be the adversary of religion, but merely that the State be neutral in its relations with groups of religious believers and nonbelievers (*Everson* v. *Board of Educ.,* 330 U. S. 1, 18). In enacting these statutes the State has, as it must, remained neutral, neither advancing nor inhibiting the parents' choice of religion or nonreligion but leaving it, when practicable, as it is.

Further, subdivision (g) of section 116 of the Family Court Act, and subdivision 7 of section 373 of the Social Services Law

amended the respective statutes in 1970 (L. 1970, ch. 494) to eliminate any requirement that the religious matching provisions be applied mandatorily. Both contain identical provisions that the previous subdivisions in the respective statutes " shall, so far as consistent with the best interests of the child, and where practicable, be applied so as to give effect to the religious wishes of the natural mother * * * or parents ". These portions of the amended statutes plainly place the primary emphasis on the temporal best interests of the child, subordinating the religious preference of the natural parents. The legislative intent evidenced by the language used in these statutes clearly was to forestall any First Amendment attack against them.

Moreover, prior to enactment of these amendments the words " when practicable " as set forth in section 373 of the Social Services Law (also contained in section 32 of article VI of the Constitution and all the statutes under attack here) were construed to be " of broad content, necessarily designed to accord the trial judge a discretion to approve as adoptive parents persons of a faith different from the child's in exceptional situations " (*Matter of Maxwell*, 4 N Y 2d 429, 434). Thus, since the primary effect of these statutory enactments neither advances nor inhibits religion, and plainly places primary emphasis on the temporal best interests of the child, they are not violative of the First Amendment to the United States Constitution.

The judgment appealed from, therefore, should be affirmed.

MARSH, J. P., WITMER, MOULE and HENRY, JJ., concur.

Judgment unanimously affirmed without costs.